## Saeger *against* Wilson.

The widow and heirs (who are also legatees) confirm a doubtful will, and under a mistaken supposition that one of the legacies has lapsed by death, compromise together with the administrators by the heirs releasing to the widow, and the widow conveys lands not named in the will to the administrators who settle with the legatees. Afterwards the legatee appears and recovers of the administrators. *Held* they could not recover contribution against the widow to whom they had paid over half the assets, if they still have more than the sum recovered, in their hands of the personal property of the testator, and they have sold the lands at an advance, unless an express contract be proved.

In such case, parol evidence is admissible to show all that passes.

Compromises by which money is gained or saved by executors, administrators or trustees, enure to the benefit of those for whom they act, and not of themselves.

Administrators may in some cases recover back from a distributee to whom too much has been given, though no refunding bond has been taken, but not while they have funds of the estate in their hands to more than the amount.

THIS was an action of *assumpsit* brought in the Common Pleas of *Lehigh* county, by Thomas B. Wilson and Matthew Selfridge against Margaret Wilson. The marriage of the defendant with Joseph K. Saeger was suggested before trial, and he was substituted as defendant, with notice to John Gross, trustee of Margaret Wilson, under a marriage settlement. The death of Selfridge was suggested on the trial. A verdict and judgment were rendered for the plaintiff below, which were brought up by this writ of error.

The case was argued by *J. M. Porter* and *Davis,* for the plaintiff in error, and *Gibons* and *Mallery,* for the defendant in error.

The opinion of the Court was delivered by

Huston, J.—I shall endeavour to state the facts, or so many of them as will show the points in issue. Henry Wilson died in 1826, leaving a will, which on the one side and the other was spoken of occasionally as not being completed and executed according to law; but it was proved on the 16th of August 1826, and letters testamentary issued to Matthew Selfridge and Thomas B. Wilson. No appeal was taken; and this cause is founded on the idea that all dispute as to its legality is out of the case.

By this will Henry Wilson devised and bequeathed to his wife $5000 and three houses, designated in the will; to Stacy Potts $1000; to Alice Ann Downey $500; to William Murray, in trust as specified in the will, for the eldest daughter of his uncle John Richmond $500; to each of the other children of John Richmond,

[Saeger v. Wilson.]

viz., Henry, Margaret and Jonathan $500; to the Allentown Academy $500. No executors were appointed, and the testator had lands not mentioned in the will. So far as known then or now, the testator had no relatives but the children or descendants of his deceased uncle John 'Richmond. Henry Richmond, one of those heirs, appeared with a power of attorney from Jonathan, Eleanor and Margaret, admitted to be ample; and after counsel had been consulted by Richmond and the administrators, they agreed that the will should stand; and on the 7th of August 1827, conveyed and released to the widow all their and his interest in the estate of Henry Wilson, deceased, for the consideration of $2000. On the same 7th of August 1827, Margaret, the widow, conveyed to Selfridge and Thomas B. Wilson, the administrators, (though not naming them as such) seven lots or small parcels of land, describing each by quantity and boundaries. These were not mentioned in the will. The consideration in this deed was $3500; but no money was paid by the widow to Richmond—or by Selfridge and Wilson to the widow—though they gave their bond to Richmond for himself and those he represented for $3000, (since paid), and paid in cash $500.

In May 1829 the administrators settled an account in which they took credit for having paid the above specified legacies, among these $500 to each of the children of John Richmond out of the personal estate, and a balance in their hands of $4361.84. The inventory, principally in debts due the testator, exceeded $19,000. Half of this balance was paid to the widow. In May 1835, having collected more, they settled another administration account, which showed an additional sum of $2555.86½ in their hands, and half of this was paid to the widow.

As no money had been paid by Mrs Wilson to Richmond at the execution of his deed, and none paid to her by Selfridge and Wilson at the execution of her deed to them, parol evidence was received as to what took place. James M. Porter and Robert Brooke were the counsel of Richmond. Mr Brooke, who was present when the deeds were drawn and executed, is dead. Mr Porter proved that in all the conversations with Richmond, the latter spoke of his contract being with the widow, and his agreement being with her and for her benefit; and his conveyance of all the right and claim of the heirs he represented, was to her. Mr King proved that the agreement was that the will should stand; and he and the administrators understood the lands were to be conveyed to the administrators in their own right, and that they were to pay Richmond; but he never saw the widow; and no person could tell how she understood the matter. Her counsel insisted that she conveyed the lands to Selfridge and Wilson to secure them, as they were bound in a bond to pay Richmond's heirs. The administrators insisted they were to have the lands absolutely.

Henry Richmond had stated that his oldest brother, John, was

[Saeger v. Wilson.]

dead before the testator, and the legacy to him was considered as lapsed; but in 1837 his administrator brought suit and recovered his legacy and interest, amounting to $783.75; that is, $500 and interest, 9 years and 5 months and some days. I have said the administrators paid to the widow half the amount in their hands at each of their settlements, amounting to $3457.90, and retained an equal amount in their hands. They did not take from the widow any agreement to refund in case of other claims appearing; her counsel say because they had $3457.90 in their hands to meet any demand; they say this belonged to them in their own right. They had a release from Henry Richmond from all claim by those he represented to the personal property; but I have not found any conveyance to them, except the deed from the widow for the lands conveyed to her by Henry Richmond.

The deeds by which Selfridge and Wilson sold these lands were offered in evidence. These sales were made,

One in 1828, for.................................... $2500.00
Two in 1829, for .................................... 2013.18
Another in 1829, for................................. 600.00
   "   in 1830, for.................................. 702.75
   "   in 1834, for.................................. 1268.93
   "   in 1841, for.................................. 1040.00
                                                    ─────────
                                                     8124.86
Amount of personal property released by the administrators 3457.96
                                                    ─────────
                                                    $11,582.76

The court rejected these deeds. We think they ought to have been received. The whole agreement between Richmond and the representatives of the testator was not reduced to writing. The deeds and the parol evidence, which though not contradictory, showed that the parties did not all understand it in the same way, left some uncertainty, and in such a case equity will call for everything relating to the matter, or which may throw light on it.

This suit is brought to recover from the widow the one half of what the administrators were compelled to pay John Richmond's administrators. Much of the case was left to the jury, and properly; but it has been argued here and considered by this Court in a point of view not noticed by the Common Pleas, and I suppose not suggested there. I will not say that in case of a disputed will or estate the legatees, devisees and next of kin can in no possible case make a contract with the executors or administrators by which they will release their respective claims, and that this agreement may be valid, though it may turn out very advantageous to the executors or administrators. But if such a case can exist it must be where all is distinctly understood by all parties; and it must be made clearly to appear that it was so understood and agreed. There is no doubt from the testimony of Mr King, that the administrators intended this contract for their own benefit; and there is as little doubt that Richmond understood they

were acting for the widow, and he conveyed the interest of those he represented directly to her. One of the administrators was her brother, and the other her cousin. She was not present at any of the interviews, which lasted for many days. Most clearly she always understood, and her counsel, Mr Runk, understood, when she received the half of the two amounts of their settlements, that eventually the remaining half or part of it might be hers.

The duty of these administrators was to act for the benefit of those interested; those were the devisees, legatees and next of kin. The dispute and the difficulty was as to the rights of these respective parties. The adjustment would be naturally between them; and it is pretty clear, not only from the deeds but the evidence, that Richmond and the widow thought the adjustment settled all matters as respected their rights. The administrators ran no risk; they estimated the assets and put a value on the lands, and they estimated each at about half what they produced; and to secure themselves had the assets in their own hands, and obtained the title to the lands also from the widow before they gave their bond to Richmond. They have paid this bond of $3000, and paid John's representative $783, and have above $11,000 out of which to have taken this money. On all the proof in this cause, we are of opinion they have no right to call on the widow for contribution to this legacy. It is not such a case as would justify us in saying these administrators are money out of pocket, and that in justice the widow ought to contribute to indemnify them. We do not see it proved that all the parties, or any party but themselves, intended to compromise for the benefit of these administrators, and if there can be a compromise which shall result to put a large portion of the estate in their pockets, it must be proved more clearly than is made out by the evidence in this case. Compromises by which money is gained or saved by executors or administrators or trustees, enure to the benefit of those for whom they act, and not for the benefit of the trustee.

Many things were mentioned or alluded to in the court below and here, on which we say nothing. The only question before us is, had these administrators a right to recover this money? and, without disregarding the well-settled principles as to the rights and responsibilities of those acting in a fiduciary character, we think the plaintiffs below ought not to have recovered.

The fact that no refunding receipt was taken from or asked from the widow when large payments were made her out of the personal property, was relied on. Although no refunding bond is taken, administrators may in some cases recover back from a distributee to whom too much has been given. But in this case the administrators had in their hands above $3400 out of the personal property. The additional claim did not require the one-fourth of this sum; and whatever may have been understood as to the lands, there is no conveyance of this balance of the personal estate to

the administrators, either from Richmond or from the widow. While they have this overplus, they cannot call on the widow to refund, at least without an express contract to do so, and hardly, if there was such contract. It is not in any common case that a court can allow executors, administrators or trustees to make contracts with those for whom it is their duty, by which contracts they make great gain to themselves.

Judgment reversed.