## LUCIUS SUTHON *v.* MARIE T. CASTILLE.

| 12  | 889 |
| 112 | 510 |

The purchaser of property while in the peaceable and undisturbed possession of the property, cannot maintain the revocatory action against his vendor to set aside the sale of the property to his own vendor, on the ground of fraud and simulation.

APPEAL from the District Court of St. Landry, *Martel*, J. *J. E. King*, *Swayze & Moore*, *T. H. Lewis* and *Porter*, for plaintiff and appellant. *J. H. Overton*, *J. F. Morrogh* and *Dupré & Garland*, for defendant.

COLE, J. On the 28th of March, 1845, *Pierre Labiche* being largely indebted to his wife, widow of *Jean Estorge*, and to her minor children, issue of her former marriage with said *Estorge*, by public act passed before *Adolphe Garrigues*, Judge of the parish of St. Landry, sold and transferred to his said wife, *Marie Therese Castille*, a large amount of property, in part satisfaction of her separate property and of the property of said minors, that had been received by him. By said act, it appears that he owed to the minors $23,653 06, and to said *Mrs. Castille*, for her separate right, $16,410 32, making a total due to the wife and her minor children, of $40,063 38, which the said *Pierre Labiche* acknowledged to have received and disposed of as head of the community.

Defendant in said act having resumed the administration of her separate property and renounced the community established by the marriage contract, the said *Pierre Labiche* then declares, that "wishing to replace the amount

of claims which his said wife may have against the community, either on her own account, or as tutrix of her minor children, amounting, as aforesaid, to the sum of $40,063 38," he sells to her the property which is detailed in the act of sale, consisting of lands, slaves and movables, for the price and sum of $21,230. For which sum, the wife acquits and discharges her husband *pro tanto*. The act continues: "This sale is besides made under the following conditions, to wit, that the said *Marie Therese Castille*, putting herself in the place and stead of the said *Pierre Labiche*, her husband, will pay, so as to discharge him, to *Jonathan Harris*, the sum of one hundred and twenty-nine dollars and thirty-eight cents, more or less," which added to the aforesaid $40,063 38, makes a total of $40,193 33, which deducted from $21,230, the price of the sale aforesaid, leaves a balance of $18,963 33, due the wife in her individual capacity and as tutrix, which *Pierre Labiche* in said act acknowledges to owe, and obliges himself to pay out of notes and accounts due him by different persons, the proceeds of which will be appropriated to the extinguishment of the debt.

Afterwards, to wit, in February, 1850, *Pierre Labiche* died, and on the 15th of March following, the defendant qualified and was appointed administratrix of his estate. An inventory was taken shortly afterwards, and on the 23d of October following, his succession being regarded as insolvent, a meeting of his creditors was called to decide upon the best disposition to be made of it.

The said inventory taken on the 8th of April, 1850, showed assets to the amount of $1,509 75, and only five creditors appeared or were represented at the said meeting.

The present defendant, with her privilege claim of $18,963 33, and ordinary creditors to the amount of $144 22, voted a sale for cash.

The property was accordingly sold upon those terms on the 4th of January following, realizing the sum of one thousand and fifteen dollars and sixty cents, which went to the credit of the defendant's privilege.

Afterwards, to wit, on the 19th of June, 1854, defendant, by notarial act, sold to plaintiff a sugar plantation and several slaves, which, with the exception of a small fraction of land, constituted a part of the property sold by her husband to to her as aforesaid; the price of said property was $45,000; five thousand dollars in cash, a like sum payable the 20th of April, 1855, and also on 1st of June, 1856; the remaining sum of $30,000, payable in six equal annual installments from that date thereafter; the first three installments bearing eight per cent. yearly interest from the maturity of each, and the remaining ones to bear the same rate of interest from the 1st day of June, 1857.

The obligations of the plaintiff, payable accordingly, for those several installments of the purchase money, were duly executed and paraphed by the notary, to identify them with the act of sale, which embraced a special mortgage for the security of the said payments.

With the execution of this act, faithful delivery was made, by the defendant to plaintiff, of all the property described in the deed of conveyance of which he has since, and up to this time, been in the peaceable and undisturbed possession and enjoyment of the entire revenues.

The first installment of $5,000 with interest accrued, had already matured on the 20th of April, 1855, and was yet unpaid. The second, for an equal amount, had but six months to run, when, on the 8th of December, 1856,

plaintiff acquired by conventional purchase and transfer, with subrogation from *Evariste Debaillon*, agent of his wife, *Alexandrine Ann Louallier*, four several judgments recovered by the Mechanics' and Traders' Bank of New Orleans against *Pierre Labiche*, the deceased husband of the defendant, for the consideration of seventy-five per cent. of the principal of the said judgments, exclusive of interest and costs, payable one-half on the 1st of March, 1856, and the remainder on the 1st of March, 1857, and on the 12th of March following, the date of the preceding assignment, he again acquired, by written transfer from the agent of *John Boyd*, for the sum of five hundred dollars in cash, a judgment recovered by him against the said *Pierre Labiche.*

These several judgments, including interest and costs, amounted at the trial of the present case to the sum of nine thousand nine hundred and thirty-four dollars and ninety-three cents, for which the plaintiff only paid, according to his own showing, two thousand five hundred and fifty-nine dollars and fifty cents, five hundred dollars in cash, and the balance on credits.

We would here observe, that two of the said judgments of the Mechanics' and Traders' Bank were rendered on the 13th June, 1843 ; another one was rendered on the 19th August, 1848, and the other on the 17th of May, 1848. The judgment of *Boyd* was rendered on the 14th of August, 1848.

Plaintiff in this suit represents, that by virtue of the transfer to him of said judgment that he is a mortgage creditor of the estate of *Pierre Labiche*, the late husband of the defendant, and institutes these proceedings against her both in her individual capacity and as administratrix of his succession, charging her (*mutatis mutandis*) with having never made a true and faithful inventory of the succession ; of having badly administered it, and of having rendered no account of that administeration. That the said sale of 28th May, 1845, by said *Pierre Labiche* to defendant was simulated and fraudulent and collusive between the parties, and in fraud of creditors ; that neither the marital claims of the defendant, nor those of her minor children were just, or constituted as against *Pierre Labiche* any legal grounds for restitution on his part. That the property transferred was worth double the estimated price for which it was transferred ; that the said transfer had not a legitimate cause and does not, therefore, fall within the exceptions of the legal interdiction of such contracts ; that by one of the stipulations of the act, the defendant obliged herself for the payment of a debt contracted and due by her husband ; that the defendant could not purchase for her minor children immovables without the advice and authorization of a family meeting, or invest their funds in movables, and that *Labiche* was largely indebted at the date of the act, and that the property so transferred, being the common pledge of his creditors, ought to have been appropriated to the payment of his debts.

Such are the various causes of nullity pleaded by the plaintiff against the validity of the act of the 28th of May, 1845, which he avers to have injured his rights as a creditor of the estate of said *Labiche ;* and he further avers, said act being an absolute nullity, did not divest *Labiche* of his ownership and conferred no title on defendant, and that the property bought by plaintiff of defendant, belonging to another, the sale of said property to plaintiff was void, and vested no title whatever in the plaintiff, and he asks for judgment against the defendant, as *administratrix*, for the entire amount of his several judgments, though acquired at not one-third of their face, and also still further demands of her *individually*, the absolute rescission of the sale to himself of the

19th June, 1854, the extinction of the entire existing indebtedness, amounting to forty thousand dollars exclusive of interest; the restitution of the cash payment of five thousand dollars; five thousand dollars damages for the loss of time and money, and the inconvenience to which he has been subjected, and ten thousand dollars, the value of the improvements made by him upon the premises.

Plaintiff prays that the defendant be cited in her individual capacity and as administratrix; that she be ruled to render a full account of her administration; that the acts of the 28th of May, 1845, and of the 19th of June, 1854, be severally annulled; that the several obligations executed by the plaintiff to the defendant, as the price of the latter purchase, be cancelled; that all the property described in those sales be decreed to belong to the succession of the deceased *Labiche*, as also that conveyed by *J. H. Labiche* to the defendant; that the plaintiff be recognized as a judicial mortgage creditor of said succession for the several amounts claimed by him for the judgment bought by him as aforesaid; and that he have judgment against the plaintiff individually for the sum of twenty thousand dollars, as detailed in the following specifications : the restitution of the cash payment of five thousand dollars, ten thousand dollars for the value of his improvements upon the premises, and five thousand dollars damages for the loss of time and annoyance to which he has been subjected by this litigation.

It seems to us that this statement of the case is sufficient to show that plaintiff has no cause of action, and that his demand must be rejected.

It is adverse to every principle of law and equity, that the plaintiff, while in the peaceable and undisturbed possession and enjoyment of the property purchased by him can, in defiance of his legal obligations as buyer, maintain against his vendor the action of nullity here instituted, when the sale of defendant to him is not absolutely null; but even upon the hypothesis that his action lies for the revocation of the sale to himself, and that he can legally attack the validity of the transfer from *Labiche* to the defendant, we think that the sale is valid, and, so far as the wife was concerned, coming within the exceptions to the general interdiction denounced by the Code, (C. C., Art. 2421; Troplong, vol. 1, No. 180,) and valid in *fact* as an act of honest restitution to his wife and step-children for their just dues in moneys received and appropriated by him to his own use; the evidence establishes that he was indebted in the amount alleged to his wife personally and to her as tutrix of her minor children.

It is also clear that, if the said judgments bought by him as aforesaid, in the hands of the original creditors, operated a judicial mortgage upon the property purchased by the plaintiff, his obvious and only remedy was to suspend payment of the price until security was given by the defendant against the existing dangers of disquietude in his possession. C. C., Art. 2535.

Besides, even if the said judgments could legally constitute such an outstanding hypothecary lien upon the property sold him, as to be regarded in the light of an adverse title necessary to the perfection of his own, his purchase would be interpreted as the act of a trustee of his vendor, the defendant, and he could only be entitled to reimbursement for the actual cost of the claim so acquired. *Pepper* v. *Dunlap*, 5 A. 260; *Galloway* v. *Finley et al.*, 12 Peters, 284.

We would also remark, that at the meeting of the creditors of the estate of said *Labiche*, before alluded to, not one of the judgment creditors here represented by plaintiff appeared to deliberate or vote, nor does any evidence in this record, parole or documentary, disclose that any notice was ever given to defendant, as administratrix, of the existence of such indebtedness, or of demand for payment, from the opening of the succession of *Pierre Labiche* to the institution of this suit by the present plaintiff.

Although all the mortuary proceedings in the estate of *Pierre Labiche* were, as the record shows, conducted according to the strictest formalities of law, matters also of public notoriety and of record, and must have been known to the judgment creditors aforesaid, yet no effort was made by them to obtain payment, and probably never would have been made if their claims had not been purchased by plaintiff.

We would also observe, that the sale of *Labiche* to his wife cannot now be attacked by plaintiff successfully, as defendant has pleaded the prescription of one year, which we consider as valid.  C. C., 1982 ; 2 A., 663 ; *Merchants' Bank* v. *Bank of United States*, 3 A., 250 ; *Gillespie* v. *Cammack*, 3 L., 28 ; *Petit* v. *His Creditors*.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and that the demands of plaintiff be rejected and his petition dismissed, and that he pay the costs of both courts.