Statement of the Case.
NICHOLLS, C. J.
The plaintiff alleged that she and her brother, George Ingram, are the sole heirs and descendants of George Ingram and Catherine A. Wilkinson, his wife, both deceased intestate.
That at the time of his death George Ingram owned certain property in the parish of St. Tammany, containing 450 acres, more or less, which she described. That said property was acquired by George Ingram, father of petitioner, from Nathan Page, by act before A. Bosque, recorder of the parish of St. Tammany, August 10, 1875, but, for purpose of convenience, the title thereto was placed in the name of Nicholas Claudel, and said title duly recorded in Book H, p. 593, of Conveyances, parish of St. Tammany.
That said Nicholas Claudel, prior to his death, repeatedly admitted to responsible witnesses — notably to Judge J. M. Thompson— that said property belonged to George Ingram, and that he was prepared at any time to transfer the same to his estate or to his heirs, but petitioners averred that by reason of the confusion in the affairs of her father, and of the fact that she and her brother were very young and entirely in the hands of stfangers, not having one single blood relation in the parish or state, the said transfer was never made.
That Chas. H. Heintz, Sr., was in due course appointed her tutor, and it was his duty, as he well knew the fact, to see that her rights were protected, but, on the contrary, he failed and neglected to perform his duties as her said tutor. That said Chas. H. Heintz should have paid the taxes on said property, but, on the contrary, instead of doing so, he suffered and procured said property to be offered for sale for the payment of alleged taxes due thereon, and had the same, at a pretended tax sale, adjudicated to him in the name of his daughter Miss Emma A. Heintz, who now pretended to own the same. That no taxes were due on said property, the same having never been assessed for the year for which the taxes were claimed to be due. That said Chas. H. Heintz, tutor to petitioner, conspired with his said .daughter Emma A. Heintz and with others to defraud petitioner and her brother of said property.
That said property had been inventoried in the estate of George W. Ingram, to whose succession said Heintz had procured his own appointment as tutor without bond to petitioner, and when said Heintz had full knowledge of her ownership of said property.
That, at the tax sale of said property for pretended taxes, said Heintz announced that he was buying said property for the heirs of George Ingram, to perfect title, and in consequence no one bid against him.
That said conspiracy and fraud had only been discovered within the last two weeks by petitioner through a casual conversation with one who was fully acquainted with the true facts, and for that reason she had been unable to bring this her action any sooner, but did so at once upon learning the true facts as to said title. That petitioner did not know who were the heirs of Nicholas Claudel, and reserved the. right to make them parties to this suit, though in fact they have no substantial interest therein, but solely to the end they might assert such rights as they felt disposed to assert.
*499 That petitioner did not know and could not tender the amount paid by said Chas. H. Heintz or said Emma A. Heintz for taxes or ■otherwise upon said property, if any were due by her. She averred that the rents and revenues of said property for the long period it had been held by defendants more than ■compensated them for the taxes paid, if any were due. That said property was worth over $2,000, and the rents and revenues therefrom for, say, 15 years, at the rate of $10 per month, due her by defendants, and also the sum of $1,000 for timber and wood cut from said property at intervals, and in quantities which were at present unknown to petitioner, but fully known to defendants, and a full statement of which she demanded from the defendants. That petitioner had only lately learned the true condition of her father’s estate, the knowledge of the same being constantly hid from her by the said Chas. H. Heintz, her said tutor, and by his daughter Emma A. Heintz, party with said Chas. H. Heintz to said conspiracy and fraud.
Petitioner alleged that said Chas. H. Heintz and Emma A. Heintz were estopped and barred by their conspiracy and conduct from setting up any pleas to maintain their fraudulent, illegal, and unjust claims to title to said property, and she was therefore under no legal obligation to attack said title as a tax title, but, should the court so hold that she must combat said title as a tax title, then petitioner alleged that said pretended tax title was null and void and of no effect:
(1) Because no assessment of said property was made for the year 1882, the year for which taxes it was sold.
(2) Because, if there ever had been an assessment under such description as appeared in the tax deed, then said assessment was null and void, because not sufficiently definite to locate the property.
(3) Because no notice of delinquency was served upon petitioner or upon said Claudel, or the heirs of Claudel.-
(4) Because said property was sold under a notice to unknown owners, when said W. B. Cook, tax collector, knew that petitioner was one of the owners, and knew the name and address of the heirs of Nicholas Claudel, and gave no notice either to petitioner or to the heirs of Nicholas Claudel.
(5) Because the requirements of law as to tax sales were not complied with.
In view of the premises, petitioner, reserving the right to make the heirs of Nicholas Claudel parties hereto, prayed that said Olías. H. Heintz, Sr., and said Emma A. Heintz, unmarried, residing in the parish of St. Tammany, be cited to answer this petition, and, in due course of law, that she have judgment recognizing her as owner of one undivided half of said property, and for the sum of $1,000, value of timber cut from said land, and for the sum of $1,800, value of the rent and occupancy of said land for a period of 15 years by said Chas. H. Heintz and Miss Emma A. Heintz; all said money demanded being against them in solido, trespassers.
Also for all orders necessary in the premises and for general relief.
She subsequently filed a supplemental petition, in which, reiterating all the allegations, she, after naming the heirs of Nicholas Claudel, prayed they be made parties and cited, and decreed to have no interest whatever in the property described. She further averred that Chas. H. Heintz had sold from this land since the institution of her suit 100 cords of wood, and had received the sum of $25 therefor, for 'which she should have judgment against him in the sum of $12.50. That said Chas. H. Heintz was duly appointed tutor for petitioner, as per certificate, “copies annexed hereto for reference, and as part hereof.” That said Chas. H. Heintz, as tutor for petitioner, prayed that an inventory of the estate of George Ingram and Catherine A. Ingram, father and mother of petitioner, be made by Wm. Kennedy, recorder of parish of St. Tammany. That a *501 commission issued to said Kennedy on the 18th day 'of March, 1878, and that said Kennedy on the 30th day of March, 1878, made an inventory of said estate. That said Chas. H. Heintz pointed out to said notary and to appraisers, E. R. Randolph and Wm. Badon, the property described in. petitioner’s original petition as the property of George Ingram and Catherine A. Ingram, as would appear by said inventory, a certified copy of which was annexed for reference.'
That subsequently said Chas. H. Heintz presented a petition to the honorable parish court, parish of St. Tammany, and prayed that said inventory should be homologated, and thereupon a judgment homologating said inventory was rendered. That said Chas. H. Heintz was now judicially estopped from denying the heirship and ownership of this petitioner in and to said property. That petitioner repeatedly wrote to said Heintz for information concerning the affairs of her father, but the said Heintz had studiously concealed from her the rights of herself and brother, and had destroyed all the papers and records of her late father and mother.
She prayed that she have leave to file the supplemental and amended petition.
That said original and this’ supplemental petition should be served upon said Chas. H. Heintz, Miss Emma Heintz, Mrs. Euphrasie Conrad, widow of Nicholas Claudel, and Mrs. Pauline Claudel, widow of A. A. Bechet, and that in due course there be judgment as prayed for in this and her original petition and against said Chas. H. Heintz, and in the further sum of 812.50, with all costs of these proceedings.
The heirs of Claudel answered. They averred that plaintiff’s petition declared no cause of action against them, and plaintiff prayed for no judgment against them, and hence her suit against them should be dismissed. In the event of said exception being overruled, they pleaded the general issue.
They further specially denied that they had ever heard Nicholas Claudel say that he had any property or other transactions of any nature with the late George Ingram. That neither the papers nor documents of the late Nicholas Claudel, nor his succession, filed in the civil district court of the parish of Orleans, disclose any transactions of any nature whatsoever between the late Nicholas Claudel and the late George Ingram. That this suit is the first intimation appearers had ever had of such a transaction as was herein alleged by petitioners.
In view of the premises, Mrs. Euphrasie Claudel Conrad, widow of the late Nicholas Claudel, and Mrs. Pauline Conrad, widow of the late A. A. Bechet, prayed that their exception of no cause of action be hence sustained, and that this suit as to defendants be dismissed at the cost of plaintiffs Miss Margaret Ingram et al. herein. Further, they prayed that in the event of this honorable court overruling their exception of no cause of action filed herein, and in this event only, after due proceedings had there be judgment in this honorable court sustaining their denial and answer herein, and dismissing the claims of petitioners Miss Margaret Ingram et al. as to defendants Mrs. Euphrasie Conrad Claudel, widow of the late Nicholas Claudel, and Mrs. Pauline Claudel, widow of the late A. A. Bechet, at the cost of plaintiffs herein, and for all general and equitable relief.
The court overruled these exceptions.
The defendants Emma Heintz and Charles Heintz excepted that:
(1) The allegations of plaintiff’s petition show that the plaintiff has no title to, or interest in, the lands therein described, and that the petitioner is without any interest in said lands which entitles her to prosecute this suit.
(2) For a further exception they said that the plaintiff’s petition stated no cause of ac *503 tion in favor of said plaintiff against these defendants.
And, reserving the benefit of the above exceptions for a further exception:
(3) They pleaded the prescription of three years under article 233 of the Constitution of Louisiana, and section 5 of Act No. 105, p. 155, of the Acts of 1874, and further pleaded the prescription of five years and ten years.
In view of the premises, defendants prayed that these exceptions be maintained, and the plaintiff’s petition and suit be dismissed and rejected at her costs.
Under reservation of these exceptions, Miss Emma Heintz answered. She pleaded the general issue, and averred that on the 23d day of August, 1883, at a sale made by the sheriff and ex officio tax collector of St. Tammany parish of lands upon which taxes had not been paid, she purchased the lands described in the petition. That she bought said lands in good faith with her own money, earned by her in teaching, and for the purpose of investing such money. That she did not then know that the heirs of George Ingram had or made any claim to said lands, and did not know that her father, Charles Heintz, was tutor of said heirs, or in any way connected with them, and never knew of any such claim until the institution of this suit.' She alleged that ever since she purchased said lands she had been in the actual, open, notorious, and undisputed possession of the same, and had paid the taxes upon them. And, further answering, she pleaded the prescription of one, three, five, and ten years under the law and Constitution of Louisiana. And she denied each and every allegation of said petition not hereinabove specifically admitted.
In view of the premises, she prayed that the plaintiff’s petition and demand be dismissed and rejected, with costs. Charles H. Heintz pleaded the general issue, and the prescription of one, three, five, and ten years.
On the 20th of June an agreement between the counsel of plaintiff and of the heirs of Claudel was filed in court, in which it was recited that, in view of the fact that the plaintiff demanded no judgment of any kind against the heirs of Nicholas Claudel, and in view of the further fact that the latter disclaimed any interest in the subject of the litigation, it was agreed that the suit should be dismissed as to them, without costs.
The defendants Charles H. Heintz and Emma Heintz then excepted that, in the absence of the heirs of Nicholas Claudel, and after the dismissal of the action as to them, the court could not adjudicate the rights of the other parties, as the said heirs were necessary parties. The court overruled this exception.
The district court rendered judgment in favor of the plaintiff, Margaret Ingram, against the defendants Charles Heintz, Sr., and Emma A. Heintz, adjudging and decreeing and recognizing the plaintiff, Margaret Ingram, to be the owner of the one undivided half of the property described, and adjudging and decreeing null and void the pretended tax title of Emma A. Heintz to said property, recorded in Conveyance Book at page 30 et seq., and ordering the clerk of court to note upon the margin of the page of said inscription the nullity of said pretended title, pursuant to its decree. It further rendered judgment against Charles H. Heintz, Sr., for the sum of $101.25, with legal interest from August 23, 1902, until paid.
Opinion.
The plaintiff and her brother, George Ingram, are the only children and heirs of George Ingram and his wife, Catherine A. Wilkinson.
The father died in and the mother in March, 1878.
On the 18th of March an inventory of the property of the successions of Ingram and his wife was ordered to be made by William Kennedy, parish recorder, and on the 20th of that month the inventory ordered was made. *505 It included, as belonging to those successions, the property in litigation herein.
On the 2d of April, 1878, the defendant Charles Heintz, Sr., presented a petition to the court, in which he averred that he had been recommended by a family meeting convened on behalf of the minors, Margaret and George Ingram, to be appointed their tutor without bond; that he accepted the trust. He prayed the court to appraise and homologate the proceedings; that letters of tutorship be delivered to him on his taking the legal oath and complying with the requisites of the law; that the inventory of the succession of George Ingram and wife taken by William Kennedy, parish recorder, under an order of the court, an authentic copy of which inventory he declared he presented with his petition, should be approved and homologated. He further prayed that the said minors, George and Margaret Ingram, be recognized as the sole heirs of their deceased parents, the said George Ingram and his wife, Catherine H. A. Ingram, and that they be put into possession of the estate of their said parents, and for general relief.
The court ordered, on the 2d of April, 1878, upon said petition, that the inventory and proceedings of the family meeting be approved and homologated; that the petitioner, Charles Heintz, be appointed tutor to the said minors, George and Margaret Ingram, without giving bond and security; that the said minors be recognized as the sole heirs of their deceased parents, George Ingram and Catherine Ingram; and that they be put in possession of their estate.
On the 3d of April, Charles Heintz took the oath as tutor of the said minors, and letters of tutorship issued as such on the same day.
Matters remained in that condition and situation until April 21, 1883, when the sheriff and ex officio tax collector of the parish of St. Tammany parish offered the property for sale at public auction, in enforcement upon it, as he declared, of delinquent taxes upon it for the year 1882, and at that offering an adjudication was made of the same. The last and highest bidder upon the same was Charles Heintz, Sr., then the tutor of the minors, Margaret and George Ingram, and, being recognized and declared such, he named his daughter, Emma A. Heintz, to the tax collector as being the purchaser, and decided that a deed to the property be made out in her name, and this was accordingly done, and the deed recorded on August 1, 1883.
It is now claimed by the defendants that the property did not belong to the minors at the date of this adjudication, but to the heirs of one Nicholas Claudel, in whose name the property was assessed for the taxes of 1882, and sold at the tax sale aforesaid.
On the trial of the case Miss Emma Heintz, as a witness on her own behalf, testified that she was the daughter of Charles Heintz, Sr., her codefendant; that she did not herself buy the property; that she had some money of her own on hand, and, hearing that there was land for sale for taxes, she asked her father to buy for her; that she did not specify what land; that she did not know what property was for sale; that she did not receive the deed; her father always had it; that she put no one in charge of the property but her father to manage for her; that she knew her father had made sales of wood and logs, and had consulted her about these sales; that at the time of the sale she knew nothing of her father’s connection with the succession of Ingram; that she knew the Ingram children many years before, when small children, but did not know her father was their tutor; that she thought that at the time of the sale these children were not living in the parish; they had gone; that she did not know, when she took the deed to the property, that the Ingram heirs had any claims on the property; that she knew nothing as to what moneys her father had received from the sale of timber, *507 nor from whom — knew nothing about it, left it all to her father; she let him use the money; she had never asked him for it; he had used it for taxes and whatever he thought proper; she had never received any, but she supposed she could get it if she asked for it; that she did not know what the amount of the taxes on the property had been — her father attended to that all along; that she was living with her father at the time of the sale; that she had just come to majority at that time; that her father was supporting her at that time, and she gave him control of the property for that purpose.
Charles Heintz, Sr., codefendant with his daughter, on the stand as a witness for the defense testified: That he was present at the tax sale. That he went there to buy a piece of property for Miss Emma. That she furnished him the money, and told him to invest it for her. That his daughter was at that time giving piano lessons, and making an income of her own, and had charge of her own funds. That he bought this property at the tax sale for her. He bought it in himself. That his daughter was not at the sale. She had instructed him to invest the money for her, and he did it in her name, and had the sheriff knock it down to her. That he had acted for her as manager and representative ever since. She appointed him to act for her. He had sold a few logs. She told him to do just as he pleased, if he found a chance to sell it, in paying taxes on the land he took the receipt in her name. He paid the taxes with the moneys received from the sale of the timber.
On cross-examination he said he did not think, at the time of the tax sale, that he was any longer the tutor of the children. He had not acted as tutor for a long time. That he had told his lawyer to have him discharged as tutor, and did not bother any more about it. He left it all to him. That he took no steps to have another tutor appointed. He did not want to have anything to do with it. Ingram’s succession was, so far as he could recollect, insolvent.
A witness by the name of La Croix testified that about a month after the tax adjudication he applied to Heintz to cut some timber on the place, but he declined at the time to permit him to do so, saying he had bought the property for the Ingram heirs, but that he could give him an answer later, which he never did. Heintz testified that he remembered nothing of such a conversation, and did not believe it had ever occurred.
It is evident from what has been stated that had any one, up to tire date of the tax adjudication, challenged the title of the Ingram heirs to this property, they would have been driven to a petitory action against the minors, and that in that action the protection of the interest of the minors should and would have devolved upon Heintz as their tutor. It is further clear that at that time Heintz would not be permitted, either on his own account or as acting as agent for another, to call in question the title of his wards. He would be estopped from doing so. As a matter of fact, no such action or adverse claim has been set up up to the present time.
It appears from the evidence that this property belonged at the time to Nathan Page, and that he on the 10th day of August, 1875, by notarial act, which was duly recorded, sold the same to Nicholas Claudel, an intimate friend of George Ingram, the latter being at the time of the sale 1.) Claudel in embarrassed circumstances. Claudel went no further in regard to this property than to take in his name the legal title to the same. Neither he nor his heirs ever claimed ownership under the act. On the contrary, very shortly after Ingram’s death Claudel disclaimed owning the property, and stated to Judge Thompson that he had simply *509 taken title at the solicitation of Ingram to screen it from the pursuit of the latter’s creditors. It is true that this statement was verbal, and by reason of that fact would have no legal effect as to certain parties in a litigation involving ownership, but it explains how and why it was that no claim has ever been made to ownership by Claudel or his heirs, and how and why it came to pass that the property was inventoried as belonging to the succession of Ingram and wife. The actual situation seems to have come to the knowledge in some way of parties in interest who deemed their information sufficient to justify them in placing the property in the inventory as belonging to Ingram. Claudel and his heirs have acquiesced in this action. So far as Heintz, the tutor, was concerned, the part he took in the placing of the property in the inventory and his connection with the matter committed him to the ownership of the property by the minors, and estopped him from recognizing, directly or indirectly, that of Claudel or any other person, no matter how complete their title might be. It appears that the tax collector of St. Tammany parish offered the property for sale for delinquent taxes of 1882, claimed by him to have been assessed against the same as belonging to the estate of Claudel.
A very serious issue arose between the plaintiff and the defendants as to whether the property was assessed for the taxes of 1882 either in the name or the estate of Claudel or at all; but, conceding that it was assessed in the name of the estate of Claudel, and that it was properly sent to sale under regular proceedings whicn would have divested any title, so that any title which Claudel or his heirs had passed out of them by the adjudication, it would by no means follow that the title would pass from the Claudels to either Heintz or his daughter. Under the circumstances of the case the adjudication would inure to the benefit of the minors, of whom Heintz was then the tutor. The title could not pass from the Claudels to Heintz’sdaughter, for he was powerless to have accepted any agency for a third person antagonistic to his then existing duties as tutor. If his daughter gave him money, with general instructions to invest the same for her in the purchase of property sold at a tax sale, he could not legally execute that agency upon the property in question. The legal situation would have forced him to decline the agency had it been given for the purchase of this specific tract of land. It is a well-recognized principle that if a vendee in undisturbed possession of the property purchased by him purchases an outstanding title superior to that by which he had himself acquired, the purchase inures to the benefit of the title of the latter, subject only to reimbursement to the vendee of the amount expended by him in obtaining the new title; and this rule (Davis v. Jelks, 13 La. Ann. 432; Suthon v. Castille, 12 La. Ann. 892) finds application to the case where a tutor holding property in trust for his wards acquires a title adverse to his wards, and outstanding.
In this particular case the heirs of Claudel as well as Claudel himself appear to have been perfectly willing that their title, actual or apparent, should pass out of them. They had the right to acquiesce in any proceedings which would have this effect, and the heirs of Claudel have done so. They have disclaimed in this suit any interest in the subject-matter of this litigation, and the defendants are powerless to set up on their behalf claims which not only they have never asserted, but which they expressly repudiate. West v. Negrotto, 52 La. Ann. 391, 27 South. 75.
There is no question of prescription involved in this case. The property has never passed out of the Ingram heirs, and, even had it been otherwise, the minority of the plaintiffs would have prevented their acquisition of the property by prescription.
(April 25, 1904.)
Tlie judgment appealed from is correct, and is hereby affirmed.