## Theodore P. Sheldon v. The estate of George W. Rice.

*Contract construed: Administrators: Buying property of the estate.* An agreement between the administrators and another party that they should buy on joint account certain lands "owned or pretended to be owned" by the estate which they were administering and a certain bank, whereby it was provided that in the event of the purchase of the interest of such bank said estate was to receive for its interest one-half of the amount paid for the interest of the bank, and the administrators were to sell at that price, is construed as so far recognizing and asserting an interest in, or claim to the lands as belonging to the estate, that proof in explanation, simply that neither the deceased nor his estate ever in fact owned any interest therein, would not warrant any interpretation that would not necessarily imply that such estate claimed some interest in the lands which the administrators were bargaining with others to purchase on their own account.

*Contracts: Purchase of claim upon lands: Consideration.* A contract to purchase the interest in lands of one who, though having no ownership, yet, in good faith asserts a claim thereto, such that the proposed purchaser, with full knowledge of the extent and validity of such claim, is willing to buy, is not void for want of consideration.

*Release of claim to property: Consideration.* The release or assignment of a claim to property, where the claim is made in good faith, and the releasee or assignee knows what he is bargaining for, and is not deceived, and therefore not defrauded, is sufficient consideration for a payment or promise, even though the claim prove to be unfounded in law.

SHELDON v. ESTATE OF GEORGE W. RICE.

*Administrators: Trustees dealing in trust property for their own benefit: Fraud.*
Administrators or other persons standing in the position of trustees are not to be suffered, either directly or indirectly, to acquire interests in, or bargain for benefits from, the property which in their relation as trustees they hold, manage, control, or sell for others; the law esteems it a fraud in such a trustee to take for his own benefit a position in which his interest will conflict with his duty.

*Letters of administration: Extraterritorial force: Foreign lands.* Letters of administration can have no extraterritorial force such as to give Michigan administrators control over Illinois lands; the courts of one sovereignty cannot make orders or confer appointments that of their own force can operate upon titles or confer a right to exercise a trust in the disposition of property lying within the territory of another sovereignty.

*Administrators,: Real estate.* At the common law lands are not assets in the hands of an administrator except as they are subjected to his authority by the order of a competent court.

*Administrators: Dealing in foreign lands of the estate.* An agreement between Michigan administrators and another party, that they should buy for their joint interest and benefit the claim of the estate to certain lands in Illinois, and fixing the price relatively at which such claim should be sold, is held not on its face presumptively fraudulent and consequently void on the ground that it places the administrators in relations where their self-interests conflict with their duty, since as to these Illinois lands said administrators as such could not have occupied at once the two positions of seller and purchaser.

*Administrators: Trustees: Foreign lands of the estate.* Whether where the title to such Illinois lands was held by a third person in trust for such estate, who recognized the right of such administrators to sell the lands and to direct a conveyance and to receive the purchase price as the property of the estate, such an agreement would not be open to the objections suggested in this case: — *Quære?*

*Heard July 22. Decided October 13.*

Error to Kalamazoo Circuit.

*Edwards & Sherwood,* for plaintiff in error.

*Dwight May,* for defendant in error.

COOLEY, J.

The sum demanded in this controversy is claimed to be due for advances made by the firm of T. P. Sheldon & Co., of which the claimant is survivor, for the benefit of George W. Rice in his life-time, under a written contract bearing date August 10, 1857, and to which T. P. Sheldon & Co. were the parties of the first part, and David S. Walbridge and George W. Rice the parties of the second part. In this contract it was recited that " the above parties have

30 MICH.—38.

agreed to purchase certain lands which are owned or pretended to be owned by the estate of Justus Burdick and the Farmers & Mechanics' Bank, by virtue of attachment and sale under execution; which lands are situate in the state of Illinois." Sheldon & Co. were to advance the money necessary for the purchase, not to exceed five thousand dollars, and Walbridge & Rice were to repay to them one-half thereof. And by the contract it was " understood that in the event of the purchase of the interest of the Farmers & Mechanics' bank by the said parties, the interest of the estate of the said Burdick is to be paid one-half of the said amount as paid to the said bank for their interest, and the said Walbridge and Rice, as administrators of said estate, agree that this shall be done."

It is claimed that Sheldon & Co. made the purchase as was contemplated by the contract, finding the title in William B. Ogden, and procuring from him a conveyance; and that Rice died before his proportion of the advances had been repaid. To recover that proportion a claim was presented against his estate in the probate court, but it was resisted on the ground that the contract was illegal and void on its face. The ground of supposed invalidity was that Walbridge and Rice, who were administrators of the Burdick estate, undertook by the contract to deal for their own benefit with property belonging to that estate; and this, it was said, the law would not permit. And there being no dispute that Walbridge and Rice were such administrators, duly appointed by the proper court in this state, the probate judge held the objection valid and fatal to the claim, and his determination was affirmed in the circuit court on appeal.

The question, then, on this writ of error, is whether the probate and circuit courts have erred in their conclusions regarding the validity of this contract. The claimant in the argument in this court has planted himself upon the ground that the contract, correctly interpreted, does not necessarily imply in the Burdick estate any interest what-

ever, existing at its date, in the Illinois lands. He insists that it may be understood, when referring to those lands as "owned or pretended to be owned" by the estate and by the bank, not as asserting that any such ownership existed, but as making the reference only by way of identifying the subject matter of the contract, and that, consistently with that instrument, the lands might then have been really owned, and been understood by the parties to be owned, by third persons, of whom they expected to purchase them. And to enable the court to give the proper construction to the contract, evidence was put in by the claimant which it was argued supported this view by showing that Burdick, in fact, or his estate, never had any interest whatever in these lands.

If the contract had merely referred to the lands as "owned or pretended to be owned" by the estate and the bank, this argument might be accepted as reasonable, or at least plausible, and the explanatory evidence might have been entitled to considerable weight. But the contract goes very much further, and not only recognizes an interest in those lands as belonging to the estate, or at least a claim made thereto by the estate, but it provides for the purchase thereof by Sheldon & Co. on the joint account of the parties contracting, at a price which is to be measured by the price paid to the bank for a similar interest or claim. This seems so plain on the face of the contract as to be incapable of being explained away; but if it were open to explanation, any evidence which should go no further than to show that the estate had in fact no title, would not explain it away, or, perhaps, affect the construction in any manner. The estate may have had no ownership, and yet have asserted one under such circumstances and with such grounds of equity or of apparent legal right as might have given to its claim a certain money value which these parties, for reasons of their own, were disposed to recognize and pay for; estimating such value as bearing a certain proportion to the own-

ership had or claim made to the same lands by the bank, and agreeing among themselves to bargain for it according- ly. Such an agreement, if made between parties at liberty to deal with the estate on the footing of purchasers, would have been upon sufficient consideration and entirely valid; and in a suit brought to recover advances made under and in reliance upon it, any inquiry whether the estate had or had not an interest, legal or equitable, which it might have enforced or defended in judicial proceedings, would, in the absence of fraud or mistake, be wholly irrelevant. The re- lease or assignment of a claim to property, where the claim is made in good faith, and the releasee or assignee knows what he is bargaining for, and is not deceived and there- fore not defrauded, is sufficient consideration for a payment or promise, even though the claim prove to be unfounded in law.—*Taylor v. Hare, 1 New R., 260 ; Cavode v. McKel- vey, Addis., 56 ; Lawes v. Purser, 6 El. & Bl., 930 ; Lambert v. Heath, 15 M. & W., 487 ; Chit. on Cont., 10 ; Benj. on Sales, 309.* If the law were otherwise, it would be open to every party who had purchased by quit-claim deed a title which proved invalid, to sue for and recover back the consideration, and thus have the benefit of a prin- ciple which would be equivalent to an implied warranty o f title, even though the vendor had expressly refused to war- rant, and the vendee had by the mere quit-claim obtained all he bargained for. Such a doctrine would be manifestly absurd, and it finds no support in the law.

It being thus seen that the administrators of Burdick were bargaining with others to make a purchase on their own account, and apparently for their own benefit, of an interest owned or claimed by the estate, were the probate and circuit courts in error in holding that the contract was void on its face for that reason ? This is the princi- pal question in this case; and if the general rule of law, which the lower courts applied to the case, was correctly applied, the question is not difficult of solution. It has been uniformly held that administrators, or other persons

standing in the position of trustees, are not to be suffered, either directly or indirectly, to acquire interests in, or bargain for benefits from the property which, in their relation as trustees, they hold, manage, control or sell for others. They cannot occúpy the position of buyers, and, as such, interested to procure the property at the lowest possible price, when, as trustees, they are to make sale, and their duty requires them to obtain the highest price at which the property may be fairly sold. The law esteems it a fraud in such a trustee to take, for his own benefit, a position in which his interest will conflict with his duty.— *Davoue v. Fanning, 2 Johns. Ch., 252 ; Michoud v. Girod, 4 How., 503 ; Whichcote v. Lawrence, 3 Ves., 740 ; Lord Hardwicke v. Vernon, 4 Ves., 411; Ex parte Lacey, 6 Ves., 626 ; Docker v. Somes, 2 My. & K., 655; Farnam v. Brooks, 9 Pick., 212; Saeger v. Wilson, 4 Watts & S., 501; Rogers v. Rogers, 3 Wend., 503 ; Torrey v. Bank of Orleans, 9 Paige, 649 ; Terwilliger v. Brown, 44 N. Y., 240 ; Beaubien v. Poupard, Har. Ch., 206 ; Dwight v. Blackmar, 2 Mich., 330 ; Moore v. Mandlebaum, 8 Mich., 433 ; 4 Kent, 429 ; Story Eq. Jur., § 322.* The reasons for this general rule are fully explained in several of the cases above cited, and it has been well said that "the rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity."—*Michoud v. Girod, 4 How., 555.*

The rule is clear, but it is still possible that it may not be applicable to this case, in view of its peculiar facts. Walbridge and Rice, as has been seen, were administrators on the estate, appointed in the state of Michigan. The lands which were to be purchased lay in the state of Illinois. Did these lands come under their control so as to be subject to their trust? This may depend upon the proper solution of another question, namely, whether their letters of administration could have extraterritorial force. In general, it must be conceded the appointment of an

administrator confers only a local authority. He has by virtue of it no right to, or control over any property that, in a foreign jurisdiction, may have belonged to his intestate. If he shall be permitted to exercise any control over such property, or to make any disposition of it there, the authority to do so must come from the statutes of the foreign jurisdiction, or it must be permitted of mere comity; for the courts of one sovereignty cannot make orders or confer appointments that of their own force can operate upon titles or confer a right to exercise a trust in the disposition of property lying within the territory of another.—*Story Confl. L.*, §§ *512, 529 ; 2 Redf. on Wills, 16 ; Thayer v. Lane, Wal. Ch., 200.* Moreover, at the common law lands are not assets in the hands of an administrator, except as they are subjected to his authority by the order of a competent court; and when these two impediments are considered, it will not readily be perceived how these Michigan administrators would have found it possible as such to deal as vendors acting for the estate with the Illinois lands. They could not have given a title, either legal or equitable, which the courts of that state would have recognized, or under which the purchaser could have compelled any person in the occupancy of the lands to surrender possession, or which would be available as a defense to the claims of the heirs, or which would preclude the lands being taken and sold under administration proceedings in the state of Illinois. It would consequently seem impossible that, as to the lands or claim which constituted the subject matter of this contract, these administrators as such could have occupied at once the two positions of seller and purchaser. To have rendered that legally possible, they must have taken out ancillary letters in the state of Illinois, and obtained from the proper court in that state the requisite authority to make sale of the lands under its statutes. It is not suggested that any such letters were ever taken out, or any such authority obtained. The conclusion must be, that Walbridge and Rice, in thus agreeing to unite in a

purchase where presumptively they could have no authority to sell, have failed, whatever may have been their understanding or purpose, to place themselves in positions where duty would conflict with interest.

It may be said that by the contract they assumed to fix on behalf of the estate the consideration which should be paid for its interest or claim.    But this would be an idle assumption, if in fact they had no authority to make a sale. Their understanding that the price should be one sum or another, or be arrived at in one way or another, could not bind the heirs, or influence in any manner a sale under a subsequent administration in Illinois.    To render it obligatory upon any one, they must first have agreed with the heirs what the price should be, and they must have acted as the agent of the heirs in bargaining.    Perhaps an inference would arise from this contract that it was some such previous agreement with the heirs which enabled the administrators to speak with such confidence regarding the price when making this contract.    If the heirs were all of age and competent to act on their own behalf, and if the property in Michigan was ample for the payment of all demands against the estate, such an agreement would have been perfectly legal, and in no respect immoral or blamable. It cannot be said, therefore, that this contract is on its face presumptively fraudulent, and consequently void, when nothing appears in it that is inconsistent with a state of facts which would remove it entirely from the operation of any principle which has been objected to it, and render it unobjectionable.

It is perhaps to be regretted that the case is not here upon a full finding of the facts, to the end that a final disposition might now be made of it.    But many things in regard to which this record is silent might be suggested as open to proof on a new trial, and liable, perhaps, to influence or control the final determination of the case.    Some of the facts which do appear point to an inference that Ogden's title, whatever it was, was held in trust for the

bank and for this estate. Should that fact be shown on a new trial, and should it further appear that Ogden, as trustee, recognized the right of Walbridge and Rice, as administrators, to sell the lands, and permitted them to make sale, gave conveyance as they directed, and accounted to them for the money as the property of the estate, we might then, perhaps, have the question of the legal right and competency of these parties to enter into this contract presented in a new form. But a discussion of that question now would be premature, not only because the facts are not shown and may not raise it, but also because counsel have not been heard upon it.

The judgment must be reversed, with costs, and a new trial ordered.

CHRISTIANCY and CAMPBELL, JJ., concurred.

GRAVES, CH. J., did not sit in this case.