## JOHNSTON v. LOOSE.

1. DOWER — EQUITY — UNADMEASURED DOWER INTEREST — ASSIGN-
MENTS.

    The purchaser of an unadmeasured dower interest in lands
may come into a court of equity for the purpose of ad-
measuring such dower as against the heirs, and compelling
conveyance by the widow after such dower is admeasured.

2. LIMITATION OF ACTIONS—DOWER—RUNNING OF STATUTES.

    Under 3 Comp. Laws 1915, § 11661, the statute of limitations
would not run against the right of a widow to have her
dower assigned while she continued to reside upon the
premises with the children, without objection by the heirs.

3. GUARDIAN AND WARD—TRUSTS—PURCHASE OF DOWER INTEREST
 ·IN LANDS OF WARDS—VALIDITY.

    Where the guardian of minor heirs purchased the dower
interest of-the widow in the lands of his wards, *held*,
that while such purchase for his own benefit may not be
prohibited by the literal terms of the statute (3 Comp.
Laws 1915, §§ 14011,.11065), it is prohibited by the general
principles of the law of trusts, and the wards, not the
guardian, are entitled to the benefit of the purchase. BIRD,
J., dissenting.

4. SAME—EQUITY—MAXIMS.

    While the purchase of the guardian will be held to inure
to the benefit of the wards, on the principle that he who
seeks equity must do equity, they will be required to ac-
count to plaintiff for the purchase price, with interest, he
to be charged with rents and profits for the period, al-
though it appears that shortly before these proceedings
were brought the widow assigned to the heirs her dower
interest. OSTRANDER, C. J., and BIRD, J., dissenting.

Appeal from Livingston; Hart, J., presiding. Sub-
mitted October 12, 1917. (Docket No. 98.) Decided
June 3, 1918.

Bill by Charles L. Johnston against Herman Loose
and another, minors, to restrain an action of eject-

ment. From an order denying a motion to dismiss, defendants appeal. Modified, and remanded.

*Louis E. Howlett,* for plaintiff.

*Glenn S. Mack,* for defendants.

BIRD, J. In March, 1900, Alfred Loose of Livingston county died intestate, leaving an estate consisting of real and personal property. The estate was duly probated and the real estate was assigned by an order of the probate court to his two infant sons, the defendants herein, subject to the dower rights of the widow. The real property consisted of a farm of 80 acres upon which Mr. Loose lived at the time of his death and upon which the widow and boys continued to live for a time after his death. Later the widow remarried and in 1910 sold to plaintiff her dower interest for the sum of $250, said interest being conveyed by quitclaim deed. At this time plaintiff was guardian of the two minor children, and after making the purchase he credited two-thirds of the income from the farm to the minors and retained one-third himself. This arrangement and division of income continued until the year 1916 when he was superseded as guardian by Glenn S. Mack. In February, 1917, the mother appears to have released her dower rights again, this time to her boys, and they commenced an action of ejectment against plaintiff to recover the possession of the farm. Plaintiff then filed this bill for the following purposes:

"(*a*) To restrain the ejectment suit.

"(*b*) To have the dower interest of the said widow in said premises admeasured and set off, and compel the widow to reconvey to him said lands so set off.

"(*c*) To have declared a subsequent deed made by said widow to the sons, bearing date February 6, 1917, conveying her purported dower interest to them, set aside and declared to be null and void as a cloud upon plaintiff's title thereto."

Defendants answered and filed a motion, which was subsequently denied, to dismiss the bill for the following reasons:

(1) Because the plaintiff obtained no right, title or interest in and to the said premises by the conveyance above mentioned.

(2) Because the statute of limitations has run against his right to have the dower admeasured or set off.

(3) Because the conveyance made to him while he was guardian is null and void.

(4) Because only an action of ejectment could try the question involved.

(5) Because the court of equity has no jurisdiction.

1. Counsel agree that the quitclaim deed executed and delivered by the widow to plaintiff of her unadmeasured dower did not convey such a title thereto as would enable him to maintain ejectment under the authority of *Galbraith* v. *Fleming*, 60 Mich. 408. By the common law she could not maintain ejectment until her dower was admeasured. Our statute has changed this and permits her to maintain ejectment to recover her dower before it is admeasured. (3 Comp. Laws, §§ 10948-11004, 3 Comp. Laws 1915, §§ 13169-13219). But the statute does not authorize another, to whom she has assigned her interest, to do so. *Galbraith* v. *Fleming, supra.* While it is true that plaintiff has no such interest as would enable him to maintain ejectment or to make a legal defense to an action of ejectment, he has an equitable interest by reason of the assignment, which may be converted, by a court of equity, into a legal title. *Id.* This is plaintiff's position: He prays that the ejectment suit may be stayed until he can appeal to a court of equity to transform his equitable interest into a legal one so that it will be available as a defense in the ejectment suit. This is a reasonable request and he should have his day in court upon this proposition before being forced to make a

defense in the ejectment case if there are no legal barriers in the way.

2. The claim is made that the statute of limitations has run against the right of the widow to have her dower assigned; that six months after the decease of her husband she had the right to have her dower admeasured (3 Comp. Laws, § 10948, 3 Comp. Laws 1915, § 13169), not having done so within 15 years it is now too late. It appears that the widow continued to live on the premises after the death of her husband and the inference is from the pleadings that she lived there until she was remarried, about the year 1909 or 1910. If she did reside there without objection from the heirs under permission of the statute (3 Comp. Laws, § 8929, 3 Comp. Laws 1915, § 11661), the statute of limitations would not run during that time. This statute provides that:

"When a widow is entitled to dower in the lands of which her husband died seised, she may continue to occupy the same with the children or other heirs of the deceased, or may receive one-third part of the rents, issues and profits thereof so long as the heirs or others interested do not object, without having the dower assigned."

The record is not as satisfactory as it might be to enable us to determine this question, but in view of what it does show we hesitate to declare the right barred for the reason urged.

3. It is further insisted that the transfer of the dower interest to plaintiff was void because he was at the time guardian of the boys and they were owners in fee of the farm. This contention is based upon sections 9095, 11065, 3 Comp. Laws (3 Comp. Laws 1915, §§ 14011, 13307):

"(9095). The executor or administrator making the sale, and the guardian of any minor heir of the deceased, shall not directly or indirectly purchase, or be interested in the purchase of any part of the real

estate so sold, and all sales made contrary to the provisions of this section shall be void; but this section shall not prohibit any such purchase by a guardian for the benefit of his ward."

"(11065). No such master, nor any person for his benefit, shall be interested in the purchase, nor directly or indirectly purchase any of the premises sold; nor shall any guardian of any infant party in such suit, purchase or be interested in the purchase of any lands, being the subject of such suit, except for the benefit or in behalf of such infant; and all sales contrary to the provisions of this section shall be void."

The statutory inhibition contained in these sections we think is aimed at purchases made by guardians at public or official sales in respect to which they owe some duty to their wards. The interest which plaintiff purchased was one created by law for the benefit of the widow. It was a distinct interest which she owned and one in which his wards had no concern, and whether much or little was paid for the dower interest would not affect them. It was a private sale in which plaintiff's official duty did not conflict in any way with his private interest. To give these sections the construction urged by defendants would be to include therein sales not contemplated by them.

4 and 5. What has already been said herein will indicate our views sufficiently to dispose of the questions raised under these heads.

The order denying the motion should be affirmed with costs to plaintiff.

FELLOWS, J. I agree with Mr. Justice BIRD that a purchaser of an unadmeasured dower interest may come into a court of equity for the purpose of admeasuring such dower as against the heirs, and compelling conveyance by the widow after such dower is admeasured. I also agree with him that we cannot say upon this bill, that the statute of limitations has run against such cause of action. But I do not agree that

the guardian of these minors may purchase, in his own name and for his personal benefit, the dower interest of the widow in the lands to which his wards hold the fee. Such purchase by private contract may not be prohibited by the literal terms of the two statutory provisions quoted, but it is prohibited, in my judgment, by the general principles of the law of trusts. This plaintiff was the guardian of these minor defendants. As such guardian he was charged with a most sacred trust, a most sacred duty, that of guarding their interest for their benefit and for their benefit alone. When a trustee undertakes to manage for others he undertakes not to manage for his own benefit. He must not put himself in any position where his self interest may in the slightest degree have any tendency to conflict with the interest of the *cestui que trust.* To prevent this he may not personally traffic or deal in any way with the trust property, either by purchasing at public sale or by private contract. It is no answer to say that the transaction is in all regards fair and free from fraud; it is no answer to say that full value was paid; nor where the sale was a judicial one, that the sale was to the highest bidder and the proceedings regular. The trustee may deal with the trust property for the benefit of the *cestui que trust* as his or her interest may require, but for himself and for his own benefit he may deal with it not at all. Courts of equity must be most vigilant in the protection of the *cestui que trust.* They must be constantly on guard to protect the interests of minor wards. As was remarked by Lord Eldon, in *Hatch* v. *Hatch,* 9 Ves. 292:

"If the court does not watch these transactions with a jealousy almost invincible, in a great majority of cases it will lend its assistance to fraud."

It has, therefore, frequently been stated that not only is the rule designed to prevent fraud on the part of the trustee, but also to prevent the temptation to

commit fraud; and to eliminate such temptation the transaction of the trustee, if beneficial to the trust estate, will inure to the benefit of the estate at the option of the *cestui que trust,* or by order of the court; while if disadvantageous to the estate the loss must fall upon the trustee.

*Sparhawk* v. *Allen,* 21 N. H. 9, is quite analogous to the instant case. In that case defendant Allen was the guardian of the minor children of John B. Sparhawk. One George Sparhawk had by his will bequeathed to his wife Mary one-half of his personal property, and devised to her the use of one-third of his real estate; the residue was given to these minors. Upon the advice of Allen, who was a nephew of Mary, she elected to take under the statute. This gave her a larger amount of property than the will, as there were no lineal descendants. Allen then acquired by contract with the widow her interest in the estate. It was held that Allen being the guardian of the minors could not thus contract with reference to the trust property, and that such contract inured to the benefit of the trust estate; that the purchase by the guardian was illegal and he could derive no benefit from it.

I think the purchase by the plaintiff of the dower interest in the lands of his wards for his own use was in violation of his trust and illegal, and that he is not entitled to benefit by it, and I think this is settled by the reasoning underlying the decisions of this and other courts; among the numerous cases dealing with the subject see, *Dwight* v. *Blackmar,* 2 Mich. 330; *McKay* v. *Williams,* 67 Mich. 547; *Terry* v. *Tuttle,* 24 Mich 206; *Clute* v. *Barron,* 2 Mich. 192; *Clements* v. *Cates,* 49 Ark. 242; *Hindman* v. *O'Connor,* 54 Ark. 627; *Taylor* v. *Calvert,* 138 Ind. 67; *Ingram* v. *Heintz,* 112 La. 496; *Webb* v. *Branner,* 59 Kan. 190; *Thornton* v. *Gilman,* 67 N. H. 392; *Brandau* v. *Greer,* 95 Miss. 100 (see note to this case in 21 Am. & Eng. Ann. Cas.

1119) ; *Downs* v. *Rickards,* 4 Del. Ch. 416; *Davoue* v. *Fanning,* 2 John. Ch. (N. Y.) 252; *Torrey* v. *Bank of Orleans,* 9 Paige (N. Y.), 649; *Greenlaw* v. *King,* 5 Lond. Jur. 622; *Michoud* v. *Girod,* 4 How. (U. S.) 503.

In *Clute* v. *Barron, supra,* Chief Justice Whipple fully reviewed the cases, both English and American, and it was there held that the county treasurer bore such trust relations to the property sold by him for delinquent taxes as to prevent his purchase of such property.

The rule is so clearly stated by the Chancellor in *Downs* v. *Rickards, supra,* that I quote from that case:

"The principle upon which the disqualification of the trustee to buy the trust estate rests, is a very broad one, and extends, as well to sales conducted by others, as to those conducted by himself. The principle is that one shall not act for himself in any matter with respect to which he has duties to perform or interests to protect for another. The trustee of real estate, which happens, during the continuance of the trust, to fall under some judicial process of sale, such as execution process, sale in bankruptcy, or, as in this case, an order of the orphans' court, stands in this position. Though he has not the management of the sale, he had in charge the interests of the *cestui que trust,* as they may be affected by the sale, and standing in the place of his *cestui que trust,* he is not allowed to act for himself. The principle looks, not merely to prevent fraud in the management of the sale, but to the broader object of relieving trustees from any possible conflict between duty and self interest.

"The rule is one of the widest application. It applies, not only to trustees, in the strict technical sense, but to all persons holding fiduciary confidential relations, such as assignees in bankruptcy, executors and administrators, attorneys and solicitors, and with the greatest stringency to guardians. 1 Story's Eq. Jur. §§ 321, 322; 2 Sugd. on Vend. chap. 19, § 2, par. 1. The prohibition does not depend upon any question of fraud or improper advantage made by the purchase. However fair the sale, and adequate the price, the court will set it aside. In view of the difficulty of un-

raveling fraud in these transactions, the policy of the rule is, to exclude the possibility of it by making the prohibition absolute."

In the instant case these minors owned the fee of the premises in question, subject to the dower interest of the widow. This plaintiff was their guardian and trustee for their estate. While so acting he purchased that dower interest. It is highly probable that the purchase was an advantageous one, or he would not have made it. He took that interest in the lands to which his wards held title for his own use and benefit. If it was an advantageous purchase, and we must assume it was, the *cestui que trust*, not the trustee, was entitled to the benefit. He could not traffic to his personal advantage in outstanding interests in the lands of his wards. He could not buy up for his own use a mortgage, he could not purchase a tax title for his own benefit, he could not, for himself, directly or indirectly, buy at execution sale, or at any judicial sale; by the same token he may not buy, for his own use, the dower interest to which the lands are subject. Upon partition proceedings his self-interest would be entirely antagonistic to his interest and his duty as trustee. To sustain the plaintiff's claim would break down the salutary rules prescribing the conduct of trustees when dealing with trust property and expose the rights of minors to the adroit management of an interested trustee. He may not act for his own benefit, he must act for the benefit of the *cestui que trust*. The wards, not the guardian, are entitled to the benefits of this purchase.

But he who seeks equity must do equity. I do not think this bill should be dismissed. I think these minor defendants, acting through their present guardian, may elect to accept the benefit of this purchase. If they do, and treat this purchase as one for their benefit, their estate must account to the plaintiff for

the purchase price. Upon such accounting the plaintiff would be entitled to the amount paid, with simple interest at five per cent, together with taxes, if any, that have been paid, and would be chargeable with the rents and profits for the period. For this purpose I think jurisdiction should be retained and the case remanded for such proceedings as may be had not inconsistent herewith. I think the costs should abide the final determination of the case.

MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred with FELLOWS, J.

OSTRANDER, C. J. I agree to the conclusion of Mr. Justice FELLOWS except that I am of the opinion that the heirs—children—should not be compelled to repay the sum the guardian paid for the mother's dower interest. They have already rightfully acquired that interest.