BAXTER *v.* UNION INDUSTRIAL TRUST & SAVINGS BANK.

1. GUARDIAN AND WARD—REPORTS—RES JUDICATA.
    Claim of *res judicata* cannot be raised as to annual reports of
    guardian of estate of mentally incompetent person where no
    hearings were held or order of approval made on the accounts.

2. TRUSTS—CONFLICTING INTERESTS.
    Transaction by which trustee who uses trust funds to buy prop-
    erty it owns individually or is materially interested in, or sells
    trust property to itself, or to one in whom trustee is materially
    interested, is voidable at option of the *cestui.*

3. GUARDIAN AND WARD—CONFLICTING INTERESTS—TRUST COMPANY
    —AFFILIATED BANK.
    Conflict of interests in transaction by which trust company used
    funds of ward's estate to purchase bonds held by banking
    affiliate having identical stockholders *held,* sufficiently strong
    to make transaction voidable.

4. SAME—INSANE PERSONS—CONSENT—DISCLOSURE.
    In suit by former ward against guardian to set aside transaction
    whereby plaintiff receipted for moneys and effects of his
    estate and discharged guardian from liability shortly before
    adjudication declaring ward's restoration to sanity, effect of
    disclosure and consent of ward upon validity of such transac-
    tion *held,* immaterial, where guardian failed to disclose all
    material facts and did not fairly procure consent.

5. EVIDENCE—JUDICIAL NOTICE—ECONOMIC DEPRESSION.
    Supreme Court takes judicial notice of economic depression which
    was well under way and had resulted in very large depreciation
    in real estate values by March of 1930.

6. GUARDIAN AND WARD—SALE OF GUARDIAN'S ASSETS TO WARD'S
    ESTATE.
    Purchase of bond in March, 1930, from trust company by itself
    as guardian without investigation of either property securing
    the issue or financial condition of issuer *held,* improper where
    trust officer knew value of market for security behind bond
    had greatly depreciated during period of over a year before
    sale to ward's estate.

7. SAME—INVESTIGATION—GUARANTEED BONDS.

> Trust company's purchase of bonds from November, 1926, to June, 1928, as dealer from another trust company, which bonds were secured by real estate as to which no investigation was made but guaranteed by an accredited financial institution then in good standing *held*, proper and not chargeable against trust company as guardian in suit by former ward for an accounting.

8. SAME—GUARANTEED BONDS—INVESTMENT.

> In suit by former ward against guardian for accounting because of alleged fraud in purchase of bonds in 1928 for failure to inquire as to financial condition of guarantor thereof, finding that guardian violated its duty in buying them *held*, error, where there is no showing as to inadequacy of the mortgage security at time purchase was made or that purchase was otherwise improper.

9. SAME—IMPROPER INVESTMENTS—INTEREST—INCOME.

> In suit for accounting by ward against guardian latter *held*, indebted to former for improper investments with interest from date when made but credited with income received therefrom and paid to estate.

10. SAME—IMPROPER INVESTMENTS — LACHES — PREFERENCES—ACQUIESCENCE.

> In suit by ward for accounting by successors of trust company which had been his guardian, claim that plaintiff was not entitled to preferred claim against assets of defendants because of his laches before complaining of impropriety of investments *held*, untenable in absence of showing he had any knowledge of the impropriety or that his delay constituted acquiescence to such investments.

11. COSTS—APPEAL BY BOTH PARTIES.

> On appeal in suit for accounting by ward against guardian no costs are allowed where both parties appealed and neither entirely sustains claims advanced.

Appeal from Genesee; Parker (James S.), J. Submitted October 15, 1935. (Docket No. 83, Calendar No. 38,516.)   Decided December 10, 1935.

Bill by Albert Baxter against the Union Industrial Trust & Savings Bank and Mark A. Wilson, receiver of the Union Industrial Trust & Savings Bank, to set aside a guardian's discharge, for an accounting and other relief. Decree for plaintiff. Defendants appeal. Modified.

*Farley & Elliott,* for plaintiff.

*Cook & Stipes,* for defendants.

Butzel, J. On September 1, 1925, the Bankers Trust Company of Flint, Michigan, upon being appointed guardian of Albert Baxter, a mentally incompetent person, took charge of the administration of his property. Baxter was committed to the State Psychopathic Hospital at Pontiac, transferred on June 3, 1926, to the Veterans' Bureau at Battle Creek, and released on March 2, 1930.

Baxter, claiming that certain investments made by the Bankers Trust Company, as his guardian, were improper, brought suit against the Union Industrial Trust & Savings Bank and its receiver and also its predecessors, the Union Industrial Trust Company, the Bankers Trust Company, the Industrial Savings Bank and the Union Industrial Bank. We need not discuss the details of the evolution of some of the defendants from the Bankers Trust Company since no objection is raised by the defendants as to the propriety of joining all of them. The Bankers Trust Company after changing its name to the Union Industrial Trust Company, merged with the Union Industrial Bank, the .merged institution taking the name of the Union Industrial Trust & Savings Bank. Baxter charged that he was defrauded by his guardian both in the sale of his real estate, as well as the purchase of certain bonds from the proceeds of the

sale.  The lower court found that there was no fraud in the sale of the real estate but allowed the amount paid for the purchase of various bonds, without interest, as a preferred claim against defendants who have appealed.  Plaintiff limits his cross-appeal to the question of "interest."

The Bankers Trust Company and subsequently its successor, the Union Industrial Trust Company, as guardian of Baxter had filed annual reports in the probate court for the county of Genesee, showing receipts and disbursements, including in the latter amounts paid for certain bonds in question.  However, as no hearings were ever held or order of approval made on these accounts, the claim of *res judicata* cannot be raised.  On June 24, 1930, after Baxter's discharge from the Veterans' Hospital at Battle Creek, but prior to the adjudication of his restoration to sanity, he signed a receipt acknowledging payment of all moneys and effects that had come into the custody and control of his guardian, and in consideration thereof he released and discharged the guardian from all liability absolutely and forever.  Baxter then executed an instrument appointing the trust company, his former guardian, as his agent to manage his affairs and turned back to the trust company all of the property set forth in the receipt.  The question is raised whether Baxter could give a valid receipt and release prior to the adjudication, shortly thereafter made, declaring his restoration to sanity.  This, however, becomes unimportant, for the investments were either proper, or if improper, there was not full disclosure of pertinent facts, and the receipt and discharge may be set aside on the ground of fraud.  *Powell* v. *Powell,* 52 Mich. 432; *Sheldon* v. *Rice,* 30 Mich. 296 (18 Am.

Rep. 136). We, therefore, shall consider the investments which the trial judge found improper.

The Bankers Trust Company originally was an affiliate of the Industrial Savings Bank. The relationship was very similar to that existing between the Pontiac Commercial & Savings Bank and the Pontiac Trust Company as set forth in *Re Culhane's Estate,* 269 Mich. 68. In the instant case, the stockholders of the bank and the trust company were identical, the latter having been organized by the bank for the purpose of handling trust business that the bank itself could not transact under the laws then existing. For a period the trust company did not pay rent to the bank. It is obvious that profit to either the bank or the trust company through one turning over business to the other would redound to the same stockholders. The bank had at one time purchased $2,700 of Kenwood Park bonds, secured by a mortgage on a subdivision of vacant lots in the suburbs of Detroit. The cost to the bank of these particular bonds was $2,592. The guardian, in 1926, "purchased" these bonds from the bank and charged plaintiff's account with $2,700.49. This included some accrued interest. The bank retained $94.50 and the trust company in its individual capacity, not as guardian, $13.50 of the profit, which was neither passed on to the estate, nor shown in the reports of the guardian. Plaintiff was not apprized of any of these facts.

When a trust company buys for its ward's estate securities from its banking adjunct or affiliate, with the same identity of interest between the two shown to exist in the instant case, it comes within the following well-established rule of law: Where a trustee buys with trust funds property which the trustee owns or is materially interested in, or sells trust

property to himself, or to one whom the trustee is materially interested in, such a transaction is voidable at the option of the *cestui*. *Clute* v. *Barron,* 2 Mich. 192; *Dwight & Pierce* v. *Blackmar,* 2 Mich. 330 (57 Am. Dec. 130); *Campau* v. *Van Dyke,* 15 Mich. 371; *Sheldon* v. *Rice, supra; Johnston* v. *Loose,* 201 Mich. 259; *Broughton* v. *Detroit Trust Co.,* 271 Mich. 701; *Michoud* v. *Girod,* 4 How. (45 U. S.) 503; *Hammond* v. *Hopkins,* 143 U. S. 224 (12 Sup. Ct. 418); *Campbell* v. *Campbell,* 8 Fed. 460; *First National Bank of St. Petersburg* v. *Solomon* (C. C. A.), 63 Fed. (2d) 900; *Hindman* v. *O'Connor,* 54 Ark. 627 (16 S. W. 1052, 13 L. R. A. 490); *Eagle* v. *Terrell,* 95 Ark. 434 (130 S. W. 550); *Bermingham* v. *Wilcox,* 120 Cal. 467 (52 Pac. 822); *In re Wheeler's Estate,* 11 Del. Ch. 469 (101 Atl. 865); *Morse* v. *Hill,* 136 Mass. 60; *St. Paul Trust Co.* v. *Strong,* 85 Minn. 1 (88 N. W. 256); *Smith* v. *Tolversen,* 190 Minn. 410 (252 N. W. 423); *Matter of Long Island Loan & Trust Co.,* 92 App. Div. 1 (87 N. Y. Supp. 65); *Wright* v. *Morgan* (1926), 95 L. J. P. C. 171 (135 L. T. 713), 1 Perry, Trusts and Trustees (7th Ed.), § 195; Restatement of the Law of Trusts, § 170(h) and (i); 2 Pomeroy, Equity Jurisprudence (4th Ed.), §§ 957, 958; 3 Bogert, Trusts and Trustees, § 489; 1 A. L. R. 747; 14 A. L. R. 466.

Although the cases do not clearly define the degree of self-interest the trustee must have where he is not, himself, selling to or buying from the trust estate, a consideration of the following cases forces us to the conclusion that the conflict of interests in the instant case was sufficiently strong to make the transaction voidable. *In re McClung's Estate,* 267 Mich. 309; *Ottawa Banking & Trust Co.* v. *Crookston State Bank,* 185 Minn. 22 (239 N. W. 666); *Otier* v. *Neiman,* 96 Misc. Rep. 481 (160 N. Y. Supp. 610);

*Skinnel* v. *Mahoney,* 197 App. Div. 808 (189 N. Y. Supp. 845); *In re Holly's Estate,* 211 Iowa, 77 (232 N. W. 807); *Davoue* v. *Fanning,* 2 Johns. Ch. (N. Y.) 252.

Although the defendants in the instant case are guardians and not trustees, in the technical sense of the word, the above stated rule applies to them. *Johnston* v. *Loose, supra; Moyer* v. *Fletcher,* 56 Mich. 508; *Sheldon* v. *Rice, supra:* In the instant case there was neither disclosure by the guardian of all the material facts to Baxter nor was his consent to the transaction fairly procured. Consequently, we are not called upon to decide the effect of disclosure and consent upon the validity of the transaction. See *Campau* v. *Van Dyke, supra; Quimby* v. *Uhl,* 130 Mich. 198; *Skelding* v. *Dean,* 141 Mich. 143; *Malone's Guardian ad litem* v. *Malone,* 255 Ky. 210 (73 S. W. [2d] 38).

On March 12, 1930, the trust estate acquired a bond of $500 issued by the American Trust Company. This bond also was sold by the trust company to itself as guardian. Moreover, it was bought for the trust estate at a time when the depression, of which we have taken judicial notice, had already made large inroads into values, and the trust company knew that during the previous year there had been· a very large depreciation in the values of real estate. In *Roberts* v. *Michigan Trust Co., ante,* 91, we held the trustee liable under similar circumstances. The former chief executive officer of the trust company testified that he knew that there was a change in the market conditions between the time of the purchase of the bond in 1928 and its sale to the Baxter estate in 1930, and that this was especially true in reference to Detroit; that he did not know anything about the property securing the mortgage

under which the bond was issued, that he made no examination of the condition of the American Trust Company on March 12, 1930, the date the trust company sold the bond to the Baxter estate, except that he took it for granted that the American Trust Company had sufficient assets as it was operating under the State banking department.

Eleven bonds, aggregating $1,900, were purchased from the Bankers Trust Company of Detroit during the period from November 5, 1926, to June 14, 1928. The bonds were secured by real estate mortgages and guaranteed by the Bankers Trust Company of Detroit. Interest was paid promptly on these bonds for a number of years, the first default occurring October 1, 1931, and all being in default June 1, 1932. Lloyd G. Kirby, who, on February 16, 1925, became first secretary and trust officer and subsequently vice-president and secretary-treasurer of the Bankers Trust Company of Flint testified that as a former bank examiner he knew the Bankers Trust Company of Detroit, had examined it several times, that up to September, 1930, it had always redeemed its bonds upon request, that this had been its practice for 10 years and that was one of the reasons that prompted the purchase of the bonds; that he knew from other banks to whom bonds had been sold that they had always redeemed at par. Kirby further stated that he probably knew the amount of the assets and liabilities of the Bankers Trust Company of Detroit at the date the bonds were purchased, but did not recall the figures; that he took into consideration and studied the statements of the Bankers Trust Company of Detroit and particularly the ones published prior to the making of the investment. The record of the bond transactions shows that

where concessions were made by the Bankers Trust Company of Detroit to the Bankers Trust Company of Flint, as a dealer, they were rebated to the estate. There is no proof in the record that the bonds were inadequately secured. Although it appears that no physical examination of the properties securing the bonds was made at the time of purchase, we are mindful that these bonds were all purchased prior to the depression. Interest continued to be paid on them. They were purchased with the guarantee of an accredited financial institution then in good standing. Under the circumstances, without proof that the bonds were not properly secured at' the time the bonds were issued, defendants should not be held liable. The lower court erred when it held the guardian liable for the purchase of these bonds.

The American Show Case Building guaranteed bonds were bought for the sum of $198 in 1928. The only charge made is that the trust company made no inquiry as to the financial responsibility of the guarantors and did not examine their books. There was no showing as to the inadequacy of the mortgage security at the time the purchase was made. There is not a sufficient showing that there was any impropriety in the purchase, and the lower court erred in holding that the guardian violated its duty in buying them.

The defendants are indebted to the plaintiff for the amount of moneys expended in the improper trust investments. They should also be charged with legal interest from the date the improper investments were made (Restatement of the Law of Trusts, § 207), but credited with all income received from these investments and paid to the trust fund.

Defendants contend that the lower court was in error in holding that the amount charged .against

them in this case should constitute a *preferred* claim against all the assets and property belonging to the defendant Union Industrial Trust & Savings Bank, and should be preferred over general creditors of the said Union Industrial Trust & Savings Bank. They base their claim solely on the one ground, that the plaintiff was guilty of laches. This claim does not appear in the pleadings, in the course of the hearing or in the reasons and grounds for appeal, nor does the record establish its validity. While it is true that plaintiff waited a considerable period after the bonds went into default before complaining, there is no showing whatsoever that he had any knowledge of the impropriety of the investments nor was there any showing that his delay constituted acquiescence to such investments. There may be other objections to the allowance of the preference as decreed by the lower court, but they are not raised nor does the record provide us with sufficient information to decide them. As both parties have appealed, we allow no costs. The case is remanded to the lower court to compute the interest and enter decree as modified by this opinion.

POTTER, C. J., and TOY, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.