[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 147 
On October 30, 1924, Sylvester J. Linck, appellee and cross-appellant, was duly appointed by the probate court for the county of Muskegon as guardian of the estates of Catherine, Ruth and Patricia Horn, minors, aged, respectively, 10, 8 and 6 years. The estate in question was an inheritance from the mother of said minors, who had recently died.
The estate consisted of personalty in the amount of $5,098.13 and real estate appraised at $6,300. The real estate was sold under order of the probate court shortly after Mr. Linck's appointment and a real estate mortgage taken in payment, the amount of said mortgage being $6,300, and which is known in these proceedings as the Shultz mortgage. No question is raised as to the value of this security. In addition to the property inherited from the mother, the guardian received insurance from the United States Veterans Administration upon a $10,000 government policy which was in force at the time of the death of the minor's father, whose death preceded that of the mother. Monthly payments were made on this policy to the guardian in the sum of $97.48 from the time of his appointment until 1933, and thereafter in smaller amounts.
These funds, together with all others received, were deposited in the bank in the name of "Sylvester J. Linck, as guardian for Catherine, Ruth and Patricia Horn," and all investments made by said guardian, such as notes and mortgages, were likewise taken in his name as guardian for the minors. *Page 149 
The three children were duly enrolled in the Sacred Heart Academy at Grand Rapids, where they received suitable support and education consistent with the value and income of the estate. Statements were rendered the guardian periodically by the academy covering the expenses of the three children for board, room, clothes, tuition, spending money and miscellaneous expenses in one bill, and the guardian paid the bill in one check on his guardian account. The guardian never separated the items in each bill or charged them separately to a particular ward until he made a final account for Catherine in July, 1936. The accounts, however, were kept in such a way that the guardian was able to determine, by comparing his account with the itemized bills rendered to him, the amount with which each ward should be charged.
He filed his first annual account on June 1, 1926, and continued to file annual accounts up to and including April 28, 1936, filing in all 11 such accounts. On October 3, 1936, after Catherine became of age, he filed what is termed a "second supplemental account," 1936.
It appears from the record that in June, 1936, prior to the filing by the guardian of his second supplemental account, the appellant, Catherine Horn Anderson, commenced proceedings in the circuit court for the county of Kent, in chancery, against the guardian and Ruth and Patricia Horn, objecting to the accounts of the guardian and praying for an accounting of the affairs by him. This bill of complaint was dismissed, whereupon said appellant took an appeal to this court, which later, by stipulation of counsel for the respective parties, was dismissed.
After the dismissal of the above mentioned appeal, the appellant, Catherine Horn Anderson, filed *Page 150 
objections in the probate court for the county of Muskegon to the second supplemental account filed by the guardian, wherein strenuous objections were made to many items in the account, only a few of which will be here noted. She claims that the guardian had not accounted for all moneys received by him, and that unauthorized and unjustified disbursements had been made; that many poor investments of trust funds had been made which were wholly unauthorized and which were not made in good faith, and at the time of the hearing had but little, if any, value; that the guardian had not kept the funds of each ward separate but had treated the funds as one fund in contravention of the law; that all funds received by him had not been accounted for, and challenged the good faith and integrity of the guardian during the course of his 12 years of guardianship in which he handled upwards of $32,000 accruing to the estate.
No useful purpose will be served by going into details in connection with all of the numerous objections raised by the appellant. Upon the hearing in the probate court the supplemental account of the guardian as filed was allowed. An appeal was taken to the circuit where a full hearing was had on the supplemental account of the guardian and the order of the probate court allowing said account was affirmed, except in one particular, viz: the probate court had allowed the guardian an attorney's fee of $244 for moneys paid to his attorney in conformity with an order of said court authorizing the employment of an attorney for the guardian. This item was disallowed, and it is from that portion of the order that the guardian files his cross-appeal.
We will now direct our attention to the questions involved pertaining to the annual accounts. *Page 151 
During the entire guardianship of Mr. Linck, he submitted annual accounts, notices of hearing on which were duly given, and which were regularly approved by the court. In attacking Mr. Linck's stewardship, appellant attempted to go outside the grounds stated for appeal from the probate court to the circuit court and seeks to justify such action on the theory that nothing in this case is res judicata; that the annual accounts filed were not necessary as a matter of law; that they did not furnish sufficient information; that assuming the annual accounts became res judicata, when the guardian filed supplemental accounts, in which the entire guardianship was represented and the investments broken down, appellee waived the conclusiveness of the annual accounts and opened his entire guardianship to inquiry and adjudication.
The statute, 3 Comp. Laws 1929, § 15775 (Stat. Ann. § 27.2940), providing that every guardian shall give bond, with surety or sureties, to the judge of probate on condition (3) that an account be rendered within one year after his appointment, and at least once each year thereafter, first appears as Act No. 314, chap. 58, § 13, Pub. Acts 1915 (3 Comp. Laws 1915, § 13962). Hence, it can be said that the annual accounts filed were required by law during the entire period that this guardianship was in existence.
The requirement of an annual account is not deemed an idle ceremony, but an order of the probate court allowing an annual account which is not appealed from is held to be conclusive. The rule is clearly stated in Nowland v. Rice's Estate,138 Mich. 146, in these words:
"The order of the probate court allowing the first account being unappealed from, is conclusive upon *Page 152 
appellant. If he desired to dispute any of the findings of the court upon the items of that account, he should then have appealed. He cannot reopen it 12 years after it has been adjudicated, upon the assumption that it was erroneous. Parties interested in the estate had a right to assume that the account as allowed was correct, and to rely upon the order of the court as final."
However, where there is fraud, or breach of trust, or concealment of assets, or failure to give proper notice of the hearing, an allowance of an annual account is not res judicata.MacKenzie v. Union Guardian Trust Co., 262 Mich. 563; Baxter v.Union Industrial Trust Savings Bank, 273 Mich. 642; Porter v.Long, 124 Mich. 584.
It would therefore appear that appellant cannot challenge the first eight annual accounts at this late stage of the proceedings, particularly in view of the fact that in objecting to the annual accounts appellant referred only to the 9th, 10th and 11th annual accounts together with the supplemental and second supplemental account as questionable in her "reasons and grounds for appeal from the probate court to the circuit court."
Appellant's contention that the conclusiveness of these accounts was waived by the filing of the supplemental accounts is not tenable. The investments complained of were res judicata
under the foregoing authorities, but this, of course, would not affect the apportionment of the individual allotment of each ward. The supplemental accounts were made pursuant to court order, and were occasioned by the attainment of majority by Catherine and her insistence upon a settlement. This did not operate as a waiver of the finality of the first eight accounts.
The charge that the accounts in question were insufficient and improper as a matter of law is likewise *Page 153 
untenable. The photostatic copies of the accounts appearing in the record confirm the lower court's holding that the accounts filed comply with the rule requiring detailed itemized statements of receipts and disbursements.
It is true, as plaintiff contends, that in other jurisdictions a guardian of several wards is required to keep his accounts separately for each ward. See Ehrsam v. Lee,101 Conn. 349 (125 A. 621), and cases cited therein. However, this requirement is not evident in this jurisdiction. The case of Ottawa Probate Judge, for use of Fleming, v. Stevenson,55 Mich. 320, cited by appellant as authority for the proposition that a joint guardianship is not recognized in Michigan does not support plaintiff's argument. In that case suit was brought against the sole surviving surety on a guardian's bond, the guardian being dead. The only question involved was whether the action against the surety was barred since it was not brought within four years from the time when the guardian was discharged. Plaintiff argued that since the deceased was guardian of several minors, some of whom had not become of age, the statute had not run. The court held that the office of guardianship itself terminates when the ward comes of age or ceases to be incompetent; and that the purpose of the statute is to require suit to be brought against the sureties within four years after the guardian ceases to act as such for any cause. But this does not mean that an individual account must be kept for each ward, or preclude the guardian from handling the estate of his wards collectively during minority.
The general rule on this subject appears in 28 C. J. p. 1213 as follows:
"If there are several wards separate accounts should be filed for each ward, showing the disbursements *Page 154 
and the balance in favor of or against each; and if accounts are mingled the guardian will not be entitled to charge for such advances as are not shown to have been made for one particular ward. It has been held, however, that if the guardian has acted in good faith and has not incurred unreasonable expense, he should be given proper credit, although he may not be able to trace every item to the particular ward. Separate accounts have been held unnecessary when the statement shows to whose accounts each item is charged."
There appears to be no reason to disturb the lower court's holding that the accounts show receipts and disbursements, and that the evidence fails to disclose any receipts which have not been accounted for.
In approving the second supplemental account of Mr. Linck, the probate court of Muskegon county ordered that the proportionate share of Catherine Horn Anderson's interest in the estate, amounting to $3,028.18, be paid as follows:
Frank Myrtle Daggett Real Estate
 Mortgage ..........................$1,500.00 Cash ................................ 1,528.18
Appellant objects to the assignment of the Daggett mortgage at its face value because she alleges such mortgage is of little value and worth far less than $1,500. The circuit court, in affirming this portion of the probate court's order, held that the property securing the mortgage was worth in excess of $1,500.
The 11 annual accounts of the guardian list a single Daggett mortgage in the amount of $3,000, but actually there were two mortgages, both given on December 12, 1924, one a real estate mortgage covering a carpenter shop, the other a chattel mortgage covering a lumber shed and contents located on railroad *Page 155 
property, each for $1,500. The real estate mortgage contains nothing to indicate that it covered the machinery in the shop. Becoming skeptical about the quality of the chattel mortgage, Mr. Linck took a second chattel mortgage for $1,678 in August, 1934, covering the shed, lumber, cement, windows, doors, and all other stock and general equipment in the sheds, and the tools and machinery in the carpenter shop that was owned by the Daggett Lumber Company. There was no provision in either chattel mortgage providing that the renewals of stock would be covered by the mortgage.
Nothing whatever has been paid upon the principal of the real estate mortgage, but the record shows some small payments on the chattel mortgage in 1937. The guardian testified that he regarded these mortgages as good investments at the time they were originally given; that they brought in a return of seven per cent.; that the carpenter shop securing the real estate mortgage, was worth $2,000 at the present time. However, Mr. Linck further testified that he knew the stock of the lumber company was being diminished without replacement, and the evidence clearly indicates that the business is in failing circumstances, the elder Daggett appearing to have simply turned over the entire business to his son or son-in-law. The carpenter shop itself is at least 25 years old and in poor condition. Aside from his opinion as to its value, which was rejected by the lower court, the description of the building which appellant's witness Hoek gave without contradiction, is of interest in this connection.
"The building is very old. It is a shell frame construction, studding sheeted. There are two-by-four studdings and roll roofing on it. The ridge is concave, caused by the elements and age. The foundation *Page 156 
is on footings, wooden supports with maple flooring, the greater part of it in poor shape. * * * The building has depreciated about 80 per cent. The building is in poor condition. The ridge of the roof shows evidence of age, being concave, the ridge has dropped down and the side shows a wave due to the underpinning giving way. The old posts are subject to deterioration, rotten. The floor inside is fair."
In view of the fact that the Daggett chattel mortgage covers everything within the building, it follows that the sole security for the $1,500 real estate mortgage is the above described property. This mortgage was nine years overdue. Mr. Linck made no effort to reduce the principal amount with knowledge that the business to which he looked for ready payment was in failing circumstances, and the property to which he looked for security was in a dilapidated state. Under these circumstances, the guardian was negligent in failing to protect the rights of his wards and in failing to insist upon principal payments or foreclosing upon the security. It follows that it is not equitable to force Catherine Horn Anderson to assume the risk of loss because of the negligence of Mr. Linck in failing to act promptly, nor would it be just to compel the other wards to shoulder the loss which appears to be inevitable.
The rule which is applicable to this situation is stated in 88 A.L.R. 325, in these words:
"As a general rule, a trustee, guardian, executor, or administrator who makes an investment or deposit of funds of the estate, in good faith pursuant to a valid order of court authorizing such investment or deposit, is protected by the order from liability for loss of the funds so invested or deposited, unless the loss is due to subsequent neglect on his part."
Under this rule, the guardian should be charged with the Daggett real estate mortgage, and the remaining *Page 157 
assets of the estate should be apportioned among Catherine, Ruth and Patricia.
Appellant objects to charges and disbursements of the guardian for the services of his attorney in preparing the first and second supplemental final accounts. The probate court allowed the charge of $244 against the estate and charged Catherine with one-third thereof or $81.33. The circuit court disallowed that sum on the theory that appellant should not be charged for services of the attorney in correcting mistakes of the guardian and in preparing a final supplemental accounting which would have been unnecessary had it not been for such mistakes.
This expense was incurred by the order of the probate court, said order reading,
"It is ordered that the said Sylvester J. Linck, as guardian of said estate, be and is hereby authorized and directed to engage Leo C. Lillie and Howard W. Fant of Grand Haven, Michigan, as his attorneys to represent him and to take the necessary proceedings to answer any objections made to his accountings; to file a supplemental accounting in said estate."
By virtue of the order of the probate court, it was incumbent upon the counsel for the guardian to examine, analyze, and apportion the assets of the estate to comply with the order of the court. This work was incidental to and a part of the proceedings herein and was necessary for a proper presentation of Mr. Linck's defense. In view of the fact that both the probate and the circuit courts found that the charge made was reasonable, there would appear to be no reason why it should not be apportioned among the three wards, since each of the estates was benefited by the work done.
 We have examined the case of In re Grover's Estate, 233 Mich. 467, which is relied upon by appellant *Page 158 
in this connection. There a $500 charge was made for preparing the final accounting which was reduced to $100, but the difficulty in preparing that account appears to have been due to the fact that the executor was negligent in turning over funds to counsel to pay claims which the executor should have paid himself and then losing the receipts. Here, the work consisted of taking material properly in the files and putting it in a position where it could be presented to the court as a final accounting and apportionment of assets. Such being the nature of the work and the circumstances under which counsel was employed, the probate court was correct in dividing the charge among the three wards.
The order of the circuit court should be, and the same is hereby modified in accordance with this opinion, and, as modified, shall be and the same is hereby affirmed.
We are now concerned with what is just and equitable in the determination of costs. The appellant has in part maintained her position in this court and it would not be just and equitable to tax costs against her. The estates of Ruth and Patricia should not be required to pay any of the costs of this litigation, other than the fees of the guardian ad litem and his attorney, the amount of which was determined by the trial judge who appointed them. If the question of the order of distribution had been the only one raised by the appellant in this proceeding, we would have no hesitancy in awarding her costs against the appellee and cross-appellant. With other questions raised involving charges of such a nature as to necessitate the position taken by the appellee upon this appeal, we, therefore, do not feel that costs should be awarded against him. It is, therefore, the order of this court that neither the *Page 159 
appellant nor the appellee shall recover costs, and further that the costs incurred by appellee in this proceeding since the hearing in the probate court shall not be a charge against the estates of his wards.
WIEST, C.J., and BUTZEL, BUSHNELL, SHARPE, POTTER, and NORTH, JJ., concurred. McALLISTER, J., did not sit.